***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Ford and the briefs and arguments of the parties. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award, except with minor modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law, the following, which were entered into by the parties in a Pre-Trial Agreement and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. On September 30, 1996, the parties were bound by and subject to the North Carolina Workers' Compensation Act.
2. On September 30, 1996, the employer-employee relationship existed between the parties.
3. As of said date, N.C. Farm Bureau provided the coverage to the employer as provided under said Act.
4. Plaintiff sustained an injury by accident arising out of and in the course of the employment with defendant-employer on September 30, 1996. An IC Form 60 Agreement dated December 16, 1996 was filed by defendants admitting liability for plaintiff's September 30, 1996 back injury.
5. Plaintiff's average weekly wage is $416.08.
6. The parties further stipulated into evidence approximately 30 pages of medical records.
7. Plaintiff began working as an employee for defendant-employer September 9, 1996 and last performed his work duties as an employee for defendant-employer November 19, 1996. Prior to the September 30, 1996 injury, plaintiff worked for defendant-employer for approximately two months having been working as a subcontractor prior to his work as an employee.
8. Subsequent to the hearing before the Deputy Commissioner on March 17, 1998, the parties stipulated the following evidence into the record and with respect to which all Motions and Objections have been duly considered under the applicable law and rules of evidence: deposition of Paul B. Suh, M.D. dated April 16, 1998, deposition of Ira M. Hardy, II, M.D. dated May 6, 1998, deposition of J. Gregg Hardy, M.D. dated May 7, 1998, deposition of Laddie Crisp, Jr., M.D. dated April 29, 1998, deposition of F. Douglas Jones, M.D. dated June 11, 1998.
9. When the inaudibility of the hearing tapes was discovered after the appeal to the Full Commission, the parties entered into factual stipulations by letter dated September 7, 2001 which are incorporated herein by reference.
 ***********
Based upon the evidence of record and the findings of fact found by the Deputy Commissioner, the Full Commission finds as follows:
 FINDINGS OF FACT
1. On September 30, 1996, plaintiff, who was approximately 51 years of age with a seventh grade education with an employment history of primarily physical labor in the heating and air-conditioning field, was employed by defendant-employer as a heating and air-conditioning worker. As of September 30, 1996, plaintiff had been engaged as an employee of defendants since September 9, 1996 and prior to that plaintiff was engaged in the same occupational duties as a subcontractor.
2. Prior to September 30, 1996, plaintiff suffered two back injuries, one in 1978 and one in 1988, which were followed by extensive medical testing including CT scans, MRIs and physical examinations. In 1974, plaintiff suffered a ruptured disk at L5-S1 and in 1988 plaintiff suffered a second ruptured disk at L5-S1. As a result of each injury and subsequent ruptured disk, plaintiff underwent surgical procedures in both instances from which plaintiff successfully recovered retaining between a five and twenty percent permanent partial impairment of the low back for which plaintiff has received no compensation under the provisions of the North Carolina Workers' Compensation Act.
3. On September 30, 1996 while performing his duties for defendant-employer, plaintiff was attempting to install a large air-conditioner unit when his feet slipped and he experienced pain in his low back and both legs.
4. Plaintiff initially sought treatment on October 8, 1996 with his family physician, Dr. Laddie Crisp. Plaintiff complained of back pain beginning three weeks prior but worsening after the lifting incident at work. Dr. Crisp diagnosed probable lumbar radiculopathy and treated plaintiff conservatively. After plaintiff's continued complaints of pain, Dr. Crisp referred plaintiff to Dr. Douglas Jones, a neurosurgeon.
5. Dr. Jones first examined plaintiff on December 11, 1996 at which time plaintiff continued to complain of back pain and bilateral leg numbness. Dr. Jones recommended an MRI but due to plaintiff's pacemaker, a myelogram and CT scan were performed instead, the results of which were within normal limits but revealed some degeneration and loss of disc space height. Consequently, Dr. Jones did not recommend surgical intervention but rather a trial of epidural steroid injections instead. Plaintiff received temporary relief from the injections. On March 27, 1996, Dr. Jones again examined plaintiff and recommended work hardening and a functional capacity evaluation. Plaintiff completed the work hardening and was again seen by Dr. Jones on May 1, 1996 at which time Dr. Jones felt that plaintiff was capable of returning to full duty work. However, plaintiff felt that he remained unable to work. Dr. Jones released plaintiff from his care stating that plaintiff had reached maximum medical improvement from a neurological standpoint rating him with a five percent (5%) permanent partial impairment to his back. Dr. Jones further recommended that plaintiff see a neurologist to evaluate any neurological causes for plaintiff's continued complaints.
7. On June 5, 1997, plaintiff saw Dr. Gregg Hardy who felt that plaintiff might be suffering from a progressive disorder such as neuropathy or polyradiculopathy and recommended EMG and nerve conduction studies. On June 11, 1997, Dr. Hardy released plaintiff and recommended a trial of a TENS unit. However, the TENS unit did not successfully relieve plaintiff's pain. On July 9, 1997, Dr. Hardy noted that plaintiff retained a ten percent (10%) permanent partial impairment and released plaintiff to return to work.
8. Plaintiff sought treatment on June 26, 1997 from Dr. Paul B. Suh, an orthopaedic surgeon, who had been approved by defendants for a second opinion examination concerning plaintiff's rating. Dr. Suh diagnosed degenerative disc disease and possible spinal stenosis. Dr. Suh felt that plaintiff had not reached maximum medical improvement and recommended further diagnostic testing, which was not authorized by defendants. Discography performed on October 27, 1997 revealed significant disc degeneration and significant narrowing of the disk space at L5-S1. Based on the results of the discography, Dr. Suh recommended surgery consisting of a two level lumbar instrumentation decompression and fusion to extend from L4-5, L5-S1 down to the sacrum.
9. On December 19, 1997, surgery was performed which was beneficial and successfully lessened plaintiff's pain. As a result, plaintiff is able to move and function with less discomfort, walking with only mild discomfort and without pain medication.
10. Plaintiff's low back and leg conditions for which he had previous surgeries in 1973 and 1988 and plaintiff's lumbar degenerative disc disease and possible spinal stenosis were exacerbated by the September 30, 1996 incident, which occurred when plaintiff was attempting to install a large air-conditioner unit when his feet slipped and he experienced pain in his low back and both legs.
11. Plaintiff also suffers from depression, which was aggravated by plaintiff's back injury, chronic back and leg pain and consequential inability to engage in gainful employment.
12. On September 30, 1996, plaintiff sustained an injury by accident arising out of and in the course of the employment with defendant-employer resulting in plaintiff's low back and leg pains, the surgery of December 9, 1998 and an inability to engage in gainful employment.
13. Defendants filed a Form 24 request to terminate plaintiff's benefits which was approved by Order filed October 8, 1997, effective July 9, 1997 on the basis of the full-duty release provided by Dr. Hardy. However, plaintiff continued to have complaints of pain and leg numbness, which caused an inability to work and resulted in plaintiff's need for the surgery performed by Dr. Suh.
14. Dr. Suh's treatment was reasonably necessary to provide relief of plaintiff's pain.
15. Although Dr. Suh predicted that plaintiff would reach maximum medical improvement in December of 1999 with a twenty percent (20%) permanent partial impairment to his back, there is insufficient evidence of record to establish that plaintiff has in fact reached maximum medical improvement.
16. Based upon the greater weight of the medical evidence of record, plaintiff has work restrictions which include that he perform his work duties wearing a back brace at all times, avoid bending or twisting, limit his sitting and standing to 30 minutes to an hour alternatively, continue walking and home exercises as prescribed by the therapist and lift no more in excess of fifteen pounds.
17. In May of 1997, defendant employer was reluctant to provide employment for plaintiff due to his injury and indicated that his job involved crawling under buildings. Furthermore, plaintiff continued to complain of pain and leg complaints which were not fully addressed until the evaluation and treatment by Dr. Suh. Regardless of the full-duty release of July 1997, considering that plaintiff was in need of additional medical treatment and that no work was or is available for plaintiff with defendant-employer and considering plaintiff's age, lack of education, his past work experience of primarily manual labor jobs and his post-surgery restrictions, plaintiff has proven by the greater weight of the evidence that there is no suitable employment within plaintiff's restrictions and he remains unable to earn any wages in any employment as a result of his injury by accident.
18. As a result of plaintiff's September 30, 1996 injury and subsequent related surgery of December 19, 1998, plaintiff has been incapable of earning the same or greater wages in any employment from September 30, 1996 and continuing. Plaintiff has received no temporary total disability compensation benefits subsequent to September 22, 1997.
19. Plaintiff's average weekly wage was $416.08 at the time of his injury on September 30, 1996.
 ***********
Based on the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. On September 30, 1996, plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer. N.C. Gen. Stat. § 97-2(6).
2. The Form 24 filed by Defendants requesting to terminate plaintiff's benefits which was approved by Order filed October 8, 1997, effective July 9, 1997, was improvidently granted. Regardless of plaintiff's full-duty release of July 1997, considering that plaintiff was in need of additional medical treatment and that no work was or is available for plaintiff with defendant-employer and considering plaintiff's age, lack of education, his past work experience of primarily manual labor jobs and his post-surgery restrictions, plaintiff has proven by the greater weight of the evidence that there is no suitable employment within plaintiff's restrictions and he remains unable to earn any wages in any employment as a result of his injury by accident. Russell v. Lowes, 108 N.C. App. 762
(1993); N.C. Gen. Stat. § 97-29.
3. Subject to a reasonable attorney's fee, plaintiff is entitled to temporary total disability compensation benefits at the rate of $277.39 per week from September 22, 1997 and continuing until plaintiff returns to work at the same or greater wage or until further order of the Commission. N.C. Gen. Stat. § 97-29.
3. Subject to the limitations of N.C. Gen. Stat. § 97-25.1, plaintiff is entitled to all reasonably necessary medical treatment including the treatment and surgery performed by Dr. Suh related to his September 30, 1996 injury by accident for so long as such treatment tends to effect a cure, provide relief or lessen plaintiff's period of disability. N.C. Gen. Stat. § 97-25; N.C. Gen. Stat. § 97-25.1.
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission adopts and affirms the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Subject to an attorney's fee, defendants shall pay to plaintiff temporary total disability compensation benefits at the rate of $277.39 per week from September 22, 1997 and continuing until plaintiff returns to work at the same or greater wage or until further order of the Commission.
2. Subject to the limitations of N.C. Gen. Stat. § 97-25.1, defendants shall pay all reasonably necessary medical expenses resulting from plaintiff's September 30, 1996 injury including expenses for the treatment and surgery performed by Dr. Suh for so long as such expenses are for treatment which tends to effect a cure, provide relief or lessen plaintiff's period of disability when bills for the same have been approved in accordance with Commission procedure.
3. An attorney's fee of twenty-five percent of the compensation due plaintiff is hereby approved and awarded to plaintiff's attorney to be paid in a lump sum with respect to such fees which have accrued and thereafter by deducting each fourth weekly compensation payment to be paid directly to plaintiff's attorney.
4. Defendants shall pay the costs.
This the _____ day of March 2002.
 S/_____________________________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
S/_____________________________ THOMAS J. BOLCH COMMISSIONER
S/_____________________________ RENEE C. RIGGSBEE COMMISSIONER